UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BERNARD FAUST, ET AL.,

    Plaintiff(s),

v.

ARVINMERITOR, INC., ET AL.,

    Defendant(s).
_____/

Case No. 04-73656

Honorable Nancy G. Edmunds

**ORDER DENYING DEFENDANTS' MOTION FOR CHANGE OF VENUE [9]**

This matter is before the Court on Defendants' motion for change of venue. Because Defendants have not met their burden to show that a transfer should occur and for the reasons that follow, the Court DENIES the motion.

**I.  Factual and Procedural History**

Defendant Rockwell Automation owns (or owned) a manufacturing plant in Oshkosh, Wisconsin ("the Plant"). (Compl. ¶¶ 6-7.)[1] Rockwell is a Delaware corporation with its principal offices in Milwaukee, Wisconsin. (Id. ¶¶ 10-11.) In 1997, Rockwell's automotive division became a separate corporation called Meritor Automotive. (Greb Aff. ¶ 5.) Then, in 2000, Meritor Automotive merged with Arvin Industries. (Id.) The new corporation, a defendant in this action, is known as ArvinMeritor. (Id.) It is incorporated in Indiana and

---

[1] Rockwell International Corporation changed its name to Rockwell Automation in 2003. (Greb Aff. ¶ 6.) For the purposes of this motion, Rockwell International Corporation and Rockwell Automation are collectively referred to as "Rockwell."

has its principal offices in Troy, Michigan. (Compl. ¶ 12.) Presumably, Meritor (and then ArvinMeritor) took ownership of the Plant after the split. (Id. ¶¶ 8-9.)

There are five named plaintiffs. Four plaintiffs worked at the Plant and purport to represent a class individuals who also worked there, but have since retired.[2] Three of these representatives are retired employees of Rockwell (Compl. ¶¶ 5-6, 8); and the other retired from Meritor or ArvinMeritor (Id. ¶ 7). These Plaintiffs reside in Wisconsin. There are approximately 732 potential members of the class, 634 of whom also reside in Wisconsin. (Greb Aff. ¶ 10.) The International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW"), the final plaintiff, represented the Plant employees in negotiating their collective bargaining agreements with Defendants. (Id. ¶ 9.) UAW's headquarters is located in Detroit, Michigan.

On September 20, 2004, Plaintiffs filed a two count complaint alleging violations of (i) the collective bargaining agreement(s) ("CBA") and (ii) the Employee Retirement Income Security Act of 1974 ("ERISA"). Defendants then filed a motion to transfer venue pursuant to 28 U.S.C. § 1404(a).

## II.   Standard of Review

An action can be transferred to another district court only if the original action could have been brought in that court. *See, e.g., Kepler v. ITT Sheraton Corp.*, 860 F.Supp. 393, 398 (E.D. Mich. 1994).

> In deciding a section 1404(a) motion, the court must consider the following factors: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the

---

[2]The Court notes that the class has not been certified.

    cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice.

*Id.* (citation omitted).

### III.  Analysis

Defendants first argue that jurisdiction and venue are lacking. They first point out that the UAW does not have standing to bring the ERISA claim. Plaintiffs have not explicitly asserted (in their complaint or briefs), however, that the UAW (as opposed to the individual Plaintiffs) assert the ERISA claim. The Court therefore assumes that only the four individual Plaintiffs have alleged violations of this statute.

Plaintiffs' claim regarding the CBA is brought pursuant to the Labor-Management Relations Act ("LMRA"). For this claim, Defendants argue that jurisdiction and venue are not proper in this district because no Defendant is incorporated here. This argument is without merit. First, Section 301(a) of the LMRA provides that venue is proper in any district that has jurisdiction. 29 U.S.C. § 185(a). Moreover, both Rockwell and ArvinMeritor do enough business in this district to establish jurisdiction; incorporation in Michigan is unnecessary.

Plaintiffs do not contest that the action could have been brought in the Eastern District of Wisconsin. Instead, it argues that its choice of forum is entitled to a great amount of deference.[3] "While . . . a plaintiff's choice of forum should be given weight when deciding

---

[3]Both parties spend significant time addressing this issue. Plaintiffs argue that its choice of forum is entitled substantial deference. Specifically, Plaintiffs point out that "courts give special weight to a plaintiff's choice of forum in ERISA cases" because of the special venue provision in the statute. *Flynn v. Veazey Const. Corp.*, 310 F.Supp.2d 186, 193 (D.D.C. 2004)(citations omitted); 29 U.S.C. § 1132(e)(2). This provision allows an ERISA case to be brought where the plan is administered and thus makes collection of ERISA funds

whether to grant a motion to change venue, this factor is not dispositive." *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 413 (6th Cir. 1998)(citation omitted). Thus, the Court turns to the factors listed above.

### A.  Convenience of the Parties

For the named individual Plaintiffs (and, assuming it is certified, for the vast majority of the class members), transferring this action to the Eastern District of Wisconsin–their home jurisdiction–would be more convenient.[4] The same is true for Rockwell. On the other hand, ArvinMeritor and the UAW have their principal offices in this district. Both entities operate and have employees in various jurisdictions. At this point, however, it is not clear

---

"efficient, economical, and inexpensive . . . ." *Flynn*, 310 F.Supp.2d at 193 (citations omitted).

Defendants counter that the Court should give less deference to Plaintiffs' choice in this case because only six of the Plant's retirees reside in Michigan and the case is brought as a class action. *See, e.g., Fox v. Massey Ferguson, Inc.*, 1995 WL 307485 at *2 (E.D. Mich. 1995)("Defendant is correct that inasmuch as this is a class action law suit plaintiffs' choice of forum is less important.")(citing *Int'l Show Car Ass'n v. Am. Soc'y of Composers, Authors, & Publishers*, 806 F.Supp. 1308, 1310 (E.D. Mich. 1992)). Defendants allegation that a plaintiff's choice is given *no weight* when he does not reside in the forum is incorrect. *See, e.g.*, 17 MOORE'S FEDERAL PRACTICE § 111.13[1][c][ii] ("[T]he plaintiff's choice of forum is accorded *less weight* if it is not the plaintiff's residence, because often it is more difficult for the plaintiff to show why such a forum is more convenient for the plaintiff.")(footnote omitted)(emphasis added). Defendants further contend that the UAW has little (if any) interest in the matter because the retirees no longer are active members. And, moreover, there is no significant contact with this forum. *See, e.g., Hanley v. OMARC*, 6 F.Supp.2d 770, 774-75 (N.D. Ill. 1998)(even when plaintiff brings ERISA claim, the chosen forum is entitled less deference when no significant contact with the forum).

These arguments are not particularly helpful to the resolution of this matter. As with all cases, the Plaintiffs' choice is entitled to some deference. The Court must, however, address the other factors to determine if transfer is warranted.

[4]As Plaintiffs point out, however, it hardly seems appropriate for a defendant to argue that venue should be changed because of inconvenience to the plaintiff when he chose the forum in the first place. *See, e.g., Sun Oil Co. v. Lederle*, 199 F.2d 423, 424 (6th Cir. 1952)(per curiam)("[I]nconvenience to the defendant is not established by citing the number of witnesses for the plaintiff who live outside the district where the suit was begun . . . .").

where the employees/representatives who have information relating to this case reside and work.

### B. Convenience of the Witnesses

Defendants generally contend that "Plaintiffs' key witnesses will likely include the UAW's negotiating team, the individual Plaintiffs, the presidents, business agents and other representatives of the various Union locals at the plants . . . as well as some or all of the 700 or so putative class members . . . ." (Pl.'s Br. at 8.)  Even if they are not called by Plaintiffs, Defendants state that they will call these individuals as well as some of its (i.e., Rockwell's and ArvinMeritor's) employees.  It contends that "in all likelihood" most of these potential witnesses reside in Wisconsin.  They do not, however, provide any further details. *See Hanley*, 6 F.Supp.2d at 776 ("The court will not consider the convenience of . . . an unidentified witness as there is no way to tell whether that individual is a[ ] . . . resident [of the transferor forum] or not.")(citation omitted).[5]

Plaintiffs point to Richard Greb, E.T. Whitus, and John Fowler (Defendants' employees or former employees) as potential witnesses.  Greb's affidavit is relied upon by Defendants; Whitus announced the retiree healthcare changes; and, Fowler was allegedly a negotiator for Rockwell in creating one of the CBAs which Plaintiffs contend is at issue here. Defendants respond that these are not key witnesses because they did not participate in the negotiations–with the exception of Fowler, who allegedly participated only on a limited

---

[5]At oral argument, Defendants pointed to former and current employees as potential witnesses.  These names were not previously mentioned to the Court and it is unclear what information, if any, they have.  In any event, their locations are scattered throughout the United States and, while six people live in Michigan, none reside in Wisconsin.

basis (Defs.' Reply Br. at 7 n.18)–which created the CBAs–according to Defendants, the only factual dispute that is relevant in this case.

Plaintiffs also argue that UAW employees who participated in the negotiations for the CBAs at issue are located in Detroit.[6] Gary Strickland, an ArvinMeritor Vice President, participated in the negotiations for the 2000-2003 CBA. (Strickland Aff. ¶ 2.) He states that Al Switski, Lennie Anderson, and Bill Bishop–all Wisconsin residents–were also present on behalf of the Union. (Id. ¶ 3.) Unfortunately, this does not show who will be the witnesses in the action. First, there were other unknown representatives at this negotiating session and it is unclear who, if any, have relevant information.[7] Second, it has not been determined if this action will require the Court to interpret language in this CBA, or others, or all of them. Finally, contract interpretation is a matter of law. If the contract is not ambiguous, the Court will construe the contract based on its plain language. In this case, none of these witnesses would be necessary. In other words, neither party has adequately shown who are the likely witnesses and where they reside.[8]

### C. Access to Evidence

---

[6] Specifically, Plaintiffs claim that "UAW officials and negotiators–King, Bunn, Forrest, Issacson, Werking, Bolte, Millter, Sypniewski, and Hirschman–are here." (Pls.' Surreply Br. at 2.) Presumably, King is Bob King, UAW Vice President, mentioned in Plaintiffs' previous brief. (Pls.' Resp. Br. at 7, 14.) Plaintiffs do not, however, make the Court aware who the other individuals are and to what extent they participated in the CBA negotiations.

[7] Defendants, at oral argument, made the Court aware of the states in which certain current and former UAW officials reside. It is unclear, however, whether these officials will be likely witnesses. Nonetheless, nine of the sixteen individuals named live in Michigan; one lives in Wisconsin.

[8] In any event, the Court notes that all potential witnesses are employees of Defendants or Plaintiffs. This is significant because "the court generally assigns little weight to the location of employee-witnesses." *Hanley*, 6 F.Supp.2d at 775 (citation omitted).

Defendants argue that the sources of proof–witnesses, CBAs, negotiating records and bargaining notes, proposals, and Union documentation–are located in Wisconsin. Plaintiffs counter that the CBAs at issue were part of national negotiations that recently took place in this District; thus, the sources of proof are here.  As noted above, there have been a number of CBAs negotiated between Defendants and the UAW.  And it is not known which CBA controls the disposition of this case.  Thus, the parties' arguments on this issue are not persuasive.

### D.  Availability to Compel and Cost of Obtaining Witnesses

Defendants complain that most witnesses reside outside the 100-mile subpoena limit of this Court and their travel expenses will be significant.  As discussed above, however, it is not clear who the witnesses are likely to be in this case.  Thus, this argument carries little weight.[9]

### E.  Interests of Justice

Defendants claim that transfer is warranted in the interests of justice because (a) the median time to civil disposition is 7.8 months in the Eastern District of Wisconsin and 9.7 months in this district, (b) Plaintiffs will not suffer any prejudice, and (c) a federal court in Wisconsin is fully capable of interpreting the federal law at issue in this case.

Plaintiffs make a variety of claims that fit within this category.  They primarily argue that this case should be tried in the same district as two other cases pending before this Court: *Cole v. ArvinMeritor*, Case No. 03-73872 (E.D. Mich. 2004) and *Leonhardt v.*

---

[9]Defendants make a similar argument for the "practical problems" factor–i.e., they claim there will be logistical problems in bringing in out-of-state witnesses.  This argument fails for the same reason: the likely witnesses are not known.

*ArvinMeritor*, Case No. 04-72845 (E.D. Mich. 2004).  Plaintiffs claim that these cases involve the "same master agreement language" as is presented here.  This claim cannot, however, be substantiated based on the evidence submitted.

Plaintiffs also contend that they have a First Amendment right to collaborate with the Plaintiffs in *Cole* and *Leonhardt*.  Even if true, however, a transfer would not prohibit collaboration.  Thus, this argument is without merit.

Plaintiffs rely on *Reese v. CNH America*, Case No. 04-70592 (E.D. Mich. 2005)(Duggan, J.).  That case also involved a class action suit brought to recover ERISA benefits, where the defendant sought a transfer to Wisconsin–its home jurisdiction.  The court found that the defendant did not meet its burden in proving that a transfer should occur.  *Reese*, slip op. at 10.

There are other cases, cited by Defendants, where the courts came to the opposite conclusion.  In *Hanley v. OMARC*, for example, the court found that transfer was warranted.  It noted that the transferee forum was the situs of all material events–negotiation and execution of the CBA, location of employees, and the place of the breach.  *Hanley*, 6 F.Supp.2d at 775.  The court also relied on the fact that the defendants specifically identified nine witnesses that would be inconvenienced, but the plaintiffs only identified one.  *Id.* at 775-76.[10]

---

[10]   Defendants also rely on two unpublished cases where the defendant's request for a transfer was granted.  *See Great Lakes Bancorp v. Holbrock*, 1996 WL 426439 (E.D. Mich. 1996); *Van Ru Credit Corp. v. Professional Brokerage Consultants, Inc.*, 2003 WL 22462607 (N.D. Ill. 2003).  However, neither are particularly analogous to the case here.
   In *Great Lakes Bancorp*, the court noted that it would have been financially burdensome for the defendants to litigate the case in that district, while the plaintiffs maintained a corporate presence in the transferee district.  1996 WL 426439 *6.  In addition, the negotiations relevant to the contract at issue had taken place in the transferee

The determination of what forum is most appropriate is extremely fact specific. In both opinions cited by the parties, there are relevant distinguishing facts. Notably, the parties in those cases identified the witnesses so that the convenience to them could be addressed. In this case, however, neither party has identified a non-party witness (or, arguably, a witness that is a party) that is likely to testify.

It is, however, a defendant's burden to establish that a case should be transferred to another district. Moreover, a plaintiff's choice of forum is entitled to some weight. Thus, in this case, Defendants have not overcome their burden to establish that a transfer is warranted.

## IV. Conclusion

For the reasons set forth above, the Court hereby orders that Defendants motion for a change of venue to the Eastern District of Wisconsin is DENIED.

SO ORDERED.

                    s/Nancy G. Edmunds
                    Nancy G. Edmunds
                    United States District Judge

Dated:  June 30, 2005

---

district. *Id.* at *5. In this case, it is not known where the relevant negotiations occurred and the parties' ability to litigate this case in Michigan or Wisconsin is not an issue.

In *Van Ru Credit Corp.*, the court found that the transferee district was the situs of the material events. 2003 WL 22462607 *4. It also noted that the convenience of the parties and access to evidence factors weighed in favor of a transfer. Here, the situs of the material events cannot be determined based on the information presented by the parties. Moreover, neither the convenience of the parties nor the ability to access to evidence requires a transfer in this case.

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 30, 2005, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager